# IN RE ALBERT M.*
## (AC 31478)

Gruendel, Alvord and Peters, Js.

Argued September 2—officially released October 19, 2010

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Scott W. Sawyer, with whom was Lorna J. Dicker, for the appellant (respondent father).

Benjamin Zivyon, assistant attorney general, with whom, on the brief, were Richard Blumenthal, attorney general, and Susan T. Pearlman, assistant attorney general, for the appellee (petitioner).

Douglas J. Monaghan, for the minor child.

*Opinion*

PER CURIAM. To protect the constitutional right of a parent to raise his or her children; Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); Lehrer v. Davis, 214 Conn. 232, 236, 571 A.2d 691 (1990); the department of children and families (department) is required to make reasonable efforts to reunify a child with the parents prior to filing a petition for the termination of parental rights. General Statutes § 17a-111b (a); General Statutes § 17a-112 (j) (1); In re Devon B., 264 Conn. 572, 584, 825 A.2d 127 (2003). The principal issue in this case is whether the department adequately informed the father that he would lose his parental rights to his son unless he separated from the child's mother. We affirm the judgment of the trial court.

On August 12, 2008, the petitioner, the commissioner of children and families, filed a petition pursuant to § 17a-112 et seq. to terminate the parental rights of the respondents mother and father of the minor child, Albert M. After an evidentiary hearing, the court, Hon. Michael A. Mack, judge trial referee, held in favor of the petitioner and terminated the rights of both parents. Only the respondent father has appealed.

The trial court found the following facts. The father and the mother began cohabiting in 1995. In 1996, they had a son, whose guardianship was transferred to the maternal grandmother in 2006. The petitioner removed Albert, who was born in September, 2007, from his parents' care immediately following his birth in response to a report that the mother did not appear to be able to care for him. The mother cannot serve as custodial parent for Albert because she suffers from numerous impairments that interfere with her parenting. Although the father knows of the mother's disability, he has such a "highly conflicted codependent relationship" with her that he is "unable to separate from her."[1] Psychological evaluations conducted on both parents revealed a multitude of mental health concerns about the mother but showed the father's only limitation to be an inability to think abstractly. The fact that he loves Albert has not been in dispute, either at trial or in this appeal.

In light of the record at trial, the court found that the petitioner had established, by clear and convincing evidence, that the department had made reasonable efforts to reunify the father with Albert within the meaning of § 17a-111b (a),[2] that the father would not be able to achieve a sufficient degree of personal rehabilitation within a reasonable time within the meaning of § 17a-112 (j) (3) (B),[3] and that the termination of his parental

---

[1] The father continued living with the mother during virtually all of the time that Albert has been in the care of the petitioner, excepting several weeks hiatus during which he attempted separation but found it to be "ineffective."

[2] General Statutes § 17a-111b (a) provides: "The Commissioner of Children and Families shall make reasonable efforts to reunify a parent with a child unless the court (1) determines that such efforts are not required pursuant to subsection (b) of this section or subsection (j) of section 17a-112, or (2) has approved a permanency plan other than reunification pursuant to subsection (k) of section 46b-129."

[3] General Statutes § 17a-112 (j) (3) (B) provides for the termination of parental rights when the child "(i) has been found by the Superior Court or Probate Court to have been neglected or uncared for in a prior proceeding,

rights was in the best interest of the child within the meaning of § 17a-112 (k).[4]

Our standard for review of these evidentiary findings is well established. We review the court's findings to determine whether they are clearly erroneous. *In re Giovanni C.*, 120 Conn. App. 274, 275, 991 A.2d 642 (2010).

I

The father's principal claim on appeal is that the petitioner did not meet her evidentiary burden of proof under §§ 17a-111b (a) and 17a-112 (j) (3) (B) because the department failed effectively to inform him of the importance of separating from his wife, Albert's mother, in order to retain his parental rights. According to the father, this failure to communicate undermines the legitimacy of the court's findings with respect to each of the statutory requirements for termination of his parental rights. We are persuaded, however, that the record does not support the father's claim.

The centerpiece of the father's contention on appeal is that, because he has significant difficulties with abstract thinking and the department was aware of these difficulties, the department was required to

---

or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[4] General Statutes § 17a-112 (k) authorizes the court, in the dispositional phase of a termination of parental rights hearing, to determine whether the petitioner has established, by clear and convincing evidence, that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court must consider and make written findings regarding the seven factors delineated in the subsection. *In re Tremaine C.*, 117 Conn. App. 590, 600–601, 980 A.2d 330, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009).

inform him expressly about the steps he needed to take to retain his parental rights. In particular, he focuses on the department's failure ever to issue an express directive telling him to separate from the mother. We disagree that he was not informed of the importance of such a separation.

The father's argument ignores the court's express finding, based on the evidence of record, that he was told that the chance of having Albert returned to him would be increased if he separated from the mother. At trial, he testified that a department social worker had told him that he would have a better chance of having his child returned if he resided separately from the mother and that the primary obstacle to having Albert placed with him was his relationship with the mother. At oral argument in this court, he acknowledged having received this advice from the social worker. There is no claim that the advice contradicted some other instruction that he had received from the department. Significantly, he did *not* testify that he did not know that separation from the mother could help achieve reunification with the child.

On this record, we cannot conclude that it was clearly erroneous for the court to find that the department made reasonable efforts toward reunification as required by § 17a-111b (a) and that the father failed to achieve a sufficient degree of rehabilitation as required by § 17a-112 (j). The father had actual knowledge of the necessity of changing his relationship with the mother, despite the department's failure to put that requirement in concrete terms. The petitioner presented probative evidence that the relationship between the parents posed a significant barrier to the father's effective parenting of Albert and that the father failed fully to appreciate the risk that the mother could pose to their young son. The court noted the absence of any evidence "that [the father] intended to make any significant

changes to the current situation in the future . . . ." On this record, it was not clearly erroneous for the court to decline to credit the father's testimony that he would have left the mother if explicitly ordered to do so.

## II

The father finally claims that, in the dispositional phase of the termination proceeding under § 17a-112k, the court improperly found that the petitioner had established her claim that termination of his parental rights was in Albert's best interest. In addition to reiterating his argument that the department failed to give him a clear directive to separate from Albert's mother, he faults the court for failing to consider that waiting longer to give him additional time for successful rehabilitation would not be harmful to Albert. We are not persuaded.

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the father's parental rights is not in the best interests of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The best interests of the child include the child's interest in sustained growth, development, well-being and continuity and stability of its environment." (Internal quotation marks omitted.) *In re Johnson R.*, 121 Conn. App. 464, 466, 994 A.2d 739, cert. granted on other grounds, 297 Conn. 925, 998 A.2d 168 (2010). As with the findings made in the adjudicatory phase, we reverse the court's determination of the best interest of the child only if the court's findings are clearly erroneous.

In making the determination that the father challenges, the court properly followed the statutory directive to determine the best interest of the child. Notably,

the father does not challenge the sufficiency of the evidence to support any of the court's specific findings pursuant to § 17a-112 (k). He argues instead that the court improperly failed to consider that waiting longer to give him additional time to achieve successful personal rehabilitation would not have been harmful to Albert. We are not persuaded that it was clearly erroneous for the court, in recognition of Albert's interest in stability and permanency, to decline to extend the time for the father to demonstrate his ability to assume responsibility for the care of the child.

The judgment is affirmed.