# IN RE CHEVOL G. ET AL.*
## (AC 32233)

Alvord, Bear and Peters, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued November 8—officially released December 21, 2010

*David B. Rozwaski*, for the appellant (respondent mother).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

### Opinion

PER CURIAM. The respondent mother appeals from the judgments of the trial court terminating her parental rights with respect to three of her children, Chevol G., Trinity G. and Lazarus G.[1] The respondent claims, inter alia, that the court improperly found that (1) the department of children and families (department) had made reasonable efforts to reunify the children with the

---

[1] The court also terminated the parental rights of the respondent father. Because he has not appealed, we refer in this opinion to the respondent mother as the respondent. The respondent did not appeal from the court's denial of her motion to revoke the commitment of the children to the custody of the department, which was rendered simultaneously with the termination of parental rights.

respondent pursuant to General Statutes § 17a-112 (j),[2] (2) the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in the lives of the children and (3) the termination of her parental rights was in the children's best interests.[3] We affirm the judgments of the trial court.

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence."[4] (Citation

---

[2] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed [for termination of parental rights] if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[3] The court determines the child's best interest by making findings of fact by clear and convincing evidence as to seven statutory factors enumerated in § 17a-112 (k), and using those findings to assess the child's best interest. *In re Ryan R.*, 102 Conn. App. 608, 625–27, 926 A.2d 690, cert. denied, 284 Conn. 923, 924, 933 A.2d 724 (2007).

[4] The respondent contends that we should apply the "scrupulous" standard of review set forth in *In re Melody L.*, 290 Conn. 131, 174–209, 962 A.2d 81 (2009) (*Schaller, J.*, concurring). This "rigorous level of factual review has not been endorsed by our Supreme Court for termination of parental rights cases. Accordingly, we are without authority to apply it now." *In re Sole S.*, 119 Conn. App. 187, 191 n.6, 986 A.2d 351 (2010).

omitted; internal quotation marks omitted.) *In re Gabrielle M.*, 118 Conn. App. 374, 376–77, 983 A.2d 282 (2009).

The respondent first claims that the court improperly found that the department made reasonable efforts toward reunification. She argues that the "only real outstanding issue was her own individual counseling . . . [and that] for the most part, she did make an effort to engage in services," but she faults the department for its failure to "follow-up" on the offered services. We disagree.

"The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Katia M.*, 124 Conn. App. 650, 668, 6 A.3d 86 (2010). The court found that the department made reasonable efforts toward reunification, including, but not limited to, offering "case management services, assistance with transportation, including medical cabs, supervised visitation, substance abuse evaluation, individual counseling referrals, domestic violence and anger management counseling referrals" as well as services for the children. Further, the court found that the respondent was unable or unwilling to benefit from the reunification efforts because despite the services provided, she (1) failed to recognize the role she played in the removal of the children and to take the steps necessary to facilitate their return to her care, (2) was unable to control her behavior toward the service providers, which was "openly hostile," (3) failed to address her own need for counseling and (4) did not demonstrate an ability to act as a stable parent. Because there is ample clear and convincing evidence in the record to support this determination, we conclude that the court's finding was not clearly erroneous.

The respondent's next claim is that the court improperly determined that the record contained clear and convincing evidence that she failed to achieve a sufficient degree of personal rehabilitation. The respondent claims that the court "did not properly credit [her] progression toward addressing her issues . . . ." She argues that she was able to "clearly demonstrate that she has been making efforts to rehabilitate herself" and, therefore, "she could assume a role of responsibility for the care of her children in the foreseeable future with the assistance of appropriate services to help her meet her children's special needs." We disagree.

"We have stated that [p]ersonal rehabilitation as used in [§ 17a-112] refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . It requires the court to find, by clear and convincing evidence, that the level of rehabilitation she has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life." (Internal quotation marks omitted.) *In re Kaitlyn A.*, 118 Conn. App. 14, 26, 982 A.2d 253 (2009).

The court acknowledged that the respondent had attended parenting classes, demonstrated an ability to control the children in a structured setting, made minimal improvements and complied with certain suggestions by the petitioner, the commissioner of children and families, but noted that a parent's compliance with rehabilitative programs, while relevant, is not dispositive as to the rehabilitation finding. *In re Trevon G.*, 109 Conn. App. 782, 791, 952 A.2d 1280 (2008). It held that the respondent still lacked the skills, stability and consistency to take responsibility for the children, each

of whom has significant mental health needs. These findings were supported by evidence of her "abysmal" behavior during the supervised visits, inconsistent attendance at visits, lying to one of the children's mental health physicians and continued refusal to seek psychiatric care. Accordingly, the finding that the respondent failed to achieve a sufficient degree of personal rehabilitation as required under the statute is not clearly erroneous.

Finally, the respondent claims that the court erred in finding that it was in the children's best interests to have her parental rights terminated. We disagree. "In arriving at [the decision whether termination of parental rights is in the best interest of the child], the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The best interests of the child include the child's interests in sustained growth, development, well-being and continuity and stability of its environment." (Internal quotation marks omitted.) *In re Johnson R.*, 121 Conn. App. 464, 466, 994 A.2d 739, cert. granted on other grounds, 297 Conn. 925, 998 A.2d 168 (2010). In the present case, the court considered each of the seven statutory factors and also took into account, among other things, the children's interest in returning home, the respondent's slight progress over a lengthy ten year period, the "totality of the circumstances surrounding each of the children" and the potential for adoption into each of their foster homes. Its decision with respect to the best interests of the children was not clearly erroneous in light of the respondent's lengthy history of difficulty with parenting, the testimony of the mental health professionals, the recommendation of the guardian ad litem and the evidence of both the children's and the respondent's continued behavioral problems.

We have examined the record and briefs and have considered the arguments of the parties. The thorough

and well reasoned memorandum of decision sets forth detailed findings of fact that find support in the record and are neither clearly erroneous nor contrary to the law. See *In re Alexander C.*, 262 Conn. 308, 311, 813 A.2d 87 (2003). On the basis of our careful review, we conclude that the record amply supports the factual determinations made by the court, and we conclude that the court correctly applied the law to the facts it properly found.

   The judgments are affirmed.